**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-21171-BLOOM/Torres**

EULALIA MARTIN-VIANA,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,

     Defendant.

_____/

<u>**OMNIBUS ORDER ON MOTIONS FOR SUMMARY JUDGMENT, MOTIONS TO STRIKE, AND *DAUBERT* MOTIONS**</u>

**THIS CAUSE** is before the Court upon five separate Motions: (1) Defendant Royal Caribbean Cruises, Ltd.'s Motion for Summary Judgment, ECF No. [86], to which Plaintiff Eulalia Martin-Viana filed a Response, ECF No. [109], and Defendant filed a Reply, ECF No. [121]; (2) Plaintiff's Omnibus Motion to Strike Certain Testimony and Experts at Trial ("Omnibus Motion"), ECF No. [88], to which Defendant filed a Response, ECF No. [107], and Plaintiff filed a Reply, ECF No. [118]; (3) Defendant's *Daubert* Motion to Strike Certain Testimony and Preclude Testimony of Plaintiff's Experts Randall Jacques, Richard Seely and Leonard Backer ("Defendant's *Daubert* Motion"), ECF No. [87], to which Plaintiff filed a Response, ECF No. [108], and Defendant filed a Reply, ECF No. [122]; (4) Plaintiff's *Daubert* Motion, ECF No. [89], to which Defendant filed a Response, ECF No. [106], and Plaintiff filed a Reply, ECF No. [119]; and (5) Plaintiff's Motion for Partial Summary Judgment, ECF No. [91], to which Defendant filed a Response, ECF No. [104], and Plaintiff filed a Reply, ECF No. [117].

The Court has reviewed the Motions, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, Defendant's Motion for

Summary Judgment is denied, Plaintiff's Omnibus Motion is granted, Defendant's *Daubert* Motion is denied, Plaintiff's *Daubert* Motion is denied, and Plaintiff's Motion for Partial Summary Judgment is granted in part and denied in part.

## I.   BACKGROUND

On March 24, 2023, Plaintiff filed a maritime personal injury action, asserting one count of negligence against Defendant. ECF No. [1] ("Complaint"). Plaintiff alleges that she and her family boarded Defendant's ship, *Freedom of the Seas,* on November 18, 2022. The next morning, Plaintiff woke up early and went to the balcony of her room. When Plaintiff sat on the chair on the balcony, the locking mechanism gave in causing her to fall backwards, and she hit her head on the sliding glass door. *Id.* ¶¶ 13, 14. Plaintiff alleges she suffered an immediate paralysis, was unable to move her body or speak, and that she was in extreme pain. *Id.* ¶¶ 13-17. Defendant's medical team performed an X-ray, did not find a fracture, and offered Plaintiff pain medication. *Id.* ¶ 17-18. That evening, Martin-Viana was flown to a hospital in Tampa, Florida where an X-ray revealed a C5 and C6 neck fracture. *Id.* ¶ 19, 21-22. On December 8, 2022, Martin-Viana underwent surgery on her C4, C5, and C6 vertebrae in her neck. She was released from the hospital on January 4, 2023. *Id.* ¶ 24-25. Plaintiff's negligence claim alleges that Defendant failed to supervise its crew, failed to properly train its crew; failed to provide adequate crew; failed to maintain the vessel; failed to provide adequate balcony furniture; failed to provide safe furniture; and failed to warn about furniture defects. *Id.* ¶ 26(a-e). Plaintiff seeks compensatory and punitive damages. *Id.* ¶ 32.

Defendant seeks summary judgment on the grounds that Plaintiff fails to establish evidence of a dangerous condition, there is no evidence that the locking mechanism of the chair failed, any dangerous condition present with the chair was open and obvious, and a lack of notice on the part of Defendant which is necessary to establish liability. ECF No. [86] at 2. Defendant also moves to preclude the testimony of Plaintiff's safety, psychiatric, and seating experts. ECF No. [87] at 2-3.

Plaintiff seeks summary judgment on the failure to warn aspect of her negligence claim, and on Defendant's affirmative defenses that she failed to mitigate damages and that she has a preexisting medical condition precluding recovery. ECF No. [91] at 1-2. Additionally, Plaintiff moves to strike the testimony of Defendant's orthopedic, biomechanical, neurology, and rehabilitation and vocational expert based on procedural grounds. ECF No. [88]. Plaintiff filed a separate *Daubert* motion against the same experts. ECF No. [89].

### A. Material Facts

The following facts are not genuinely in dispute unless otherwise noted.[1]

Plaintiff was a passenger aboard Defendant's vessel, *Freedom of the Seas*. DSMF ¶ 1; PSMF ¶ 1. The chair at issue in this case is the Koko II Position Reclining Armchair with Aluminum Arms ("Subject Chair"). PSMF ¶ 3; D-Opp-PSMF ¶ 3. Plaintiff did not use the Subject Chair in its fully reclined position prior to the incident P-Opp-DSMF ¶ 13; D-Opp-P-Opp-DSMF ¶ 13. The manufacturer of the Subject Chair, Janus et Cie., provided Defendant with the following on its product materials and invoices: "FLAT POSITION FOR SHIPPING PURPOSE ONLY." PSMF ¶ 9; D-Opp-PSMF ¶ 9.[2]

Dr. Tyler Kress, Defendant's biomechanical expert, testified in his deposition that it was not unreasonable for Plaintiff to bring her feet off the floor and put her full body on the chair. P-Opp-DSMF ¶ 15; D-Opp-P-Opp-DSMF ¶ 15. Dr. Kress Dep. at 127:25, 128:1-9, ECF No. [92-35]. Defendant does not give any warnings or instructions to passengers on how to use the balcony

---

[1] Plaintiff filed a Statement of Material Fact, ("PSMF"), ECF No. 92, to which Defendant filed a Response, ("D-Opp-PSMF"), ECF No. [105]. Defendant filed a Statement of Material Fact, ("DSMF"), ECF No. [85], to which Plaintiff filed a Response, ("P-Opp-DSMF"), ECF No. [111], and Defendant filed a Reply, ("D-Opp-P-Opp-DSMF"), ECF No. [120].

[2] Defendant disputes SMF ¶ 9, however it failed to properly address this statement directly. Pursuant to Fed. R. Civ. P. 56(e)(2) and the additional amount of support in the record, the Court considers this fact undisputed. *See* ECF Nos. [92-17], [92-19], and [92-20].

or outdoor cabin furniture. PSMF ¶ 16; D-Opp-PSMF ¶ 16. Plaintiff was not warned by housekeeping or any attendant staffed by Defendant to not use the chair in the lay flat position. P-Opp-DSMF ¶ 24, 26-27; D-Opp-P-Opp-DSMF ¶ 24, 26-27.

Plaintiff suffered a fractured neck when she fell off the fully reclined balcony chair; the neck fracture was caused by the fall. PSMF ¶ 21; D-Opp-PSMF ¶ 21. Defendant adds that Plaintiff has gone back to work full time and does not require assistive devices to do so. D-Opp-PSMF ¶ 21. Plaintiff's injury from this fall is permanent. PSMF ¶ 27; D-Opp-PSMF ¶ 27.

## II.   LEGAL STANDARD

### A.  Maritime Law

"Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd*., 920 F.3d 710, 720 (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp*., 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. Nov. 20, 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97

(11th Cir. 2019) (quoting *Keefe,* 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959))), aff'd, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). However, with respect to warning passengers of dangers that are known or should be known, the cruise ship operator's duty does not extend to warning of open and obvious dangers. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) ("An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." (citing *Guevara*, 920 F.3d at 720 n.5)). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4. *Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (citing *Adams v. Carnival*

*Corp.*, 2009 A.M.C. 2588, at *3 (S.D. Fla. 2009) (citing *Keefe*, 867 F.2d 1318 (11th Cir. 1989))))
(alterations in *Stewart*). Moreover, a plaintiff cannot establish a breach of its duty of care unless
the plaintiff shows (1) a dangerous condition existed; [and] (2) the vessel's operator had actual
notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had
constructive notice of the dangerous condition for an interval of time sufficient to allow the
vessel's operator to implement corrective measures.

### B. *Daubert* Motion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party
proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears
the burden of laying the proper foundation, and that party must demonstrate admissibility by a
preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir.
2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine
whether expert testimony or any report prepared by an expert may be admitted, the Court engages
in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently
regarding the matters the expert intends to address; (2) the methodology by which the expert
reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact,
through the application of scientific, technical, or specialized expertise, to understand the evidence
or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562
(11th Cir. 1998) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). The
Court of Appeals for the Eleventh Circuit refers to each of these requirements as the
"qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244,
1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must
individually analyze each concept. *See id.*

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not

intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations and quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations and quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. Dec. 15, 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1258).

### C.  Motion to Strike Expert Disclosures

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To properly disclose a retained expert, parties must disclose an expert's identity "accompanied by a written report." *Id*. at Rule 26(a)(2)(B). If the witness is not required to provide a written report, the party must disclose the subject matter on which the witness is expected to present evidence

and a summary of the facts and opinions the witness is expected to testify to. *Id*. at Rule 26(a)(2)(C).

If a party violates Rules 26(a), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." *See id*. at Rule 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). In making this determination, the Court considers four factors: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted).

Ultimately, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 06-CV-496, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 06-CV-496, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-CV-23074, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements). Indeed, "[c]ourts have broad discretion to exclude untimely expert testimony—even when they are designated as 'supplemental' reports." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

### D.  Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he

has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

"If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## III.  DISCUSSION

The Parties' Motions to Strike and *Daubert* Motions will be analyzed first, followed by consideration of both Motions for Summary Judgment.

### A.  Plaintiff's Omnibus Motion to Strike

Plaintiff seeks to strike the testimony and the opinions of several of Defendant's experts pursuant to Rule 26(a). ECF No. [88]; Fed. R. Civ. P. 26(a). Rule 26(a)(2)(A)(i) provides that expert "disclosure must be accompanied by a written report [containing] a complete statement of all opinions the witness will express and the basis and reasons for them." *Id*.

### i.  Dr. Garcia's Undisclosed Opinion and Late Supplemental Reports

The Court's expert disclosure deadline was initially January 16, 2024, *see* ECF No. [58], which the parties agreed to extend until January 31, 2024. ECF No. [88] at 5; Defendant's expert, Dr. Rolando Garcia produced his initial expert report on September 5, 2023, and he was deposed on February 15, 2024. ECF No. [88] at 6. During his deposition, Dr. Garcia revealed for the first

time that he authored two supplemental reports, therefore, introducing them late, on February 15, 2024. Dr. Garcia Dep. at 14:8-20, ECF No. [92-46]. The record is clear that Dr. Garcia is an expert retained to provide testimony in this case, and that the two supplemental reports are late. *See generally* Dr. Garcia Dep. [92-46]. At issue is whether Dr. Garcia's initial report provided a written opinion regarding Plaintiff's purported degenerative condition such that it complies with Rule 26's heightened reporting requirements for retained experts. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii); *see Cedant v. the United States*, 75 F.4th 1314, 1317 (11th Cir. 2023). Defendant argues the below excerpt from Dr. Garcia's initial expert report satisfies Rule 26:

> 12/20/2022 Cervical Spine X-ray Report indicating transpedicular rod and screw fixation C4 to C7. Hardware appears intact and well-seated, with no peri-hardware lucency to suggest loosening. Multilevel degenerative changes of the cervical spine, most notably of the uncovertebral and facet arthrosis.
> ECF No. [107] at 1; *see* ECF No. [88-2] at 13.

Plaintiff argues Defendant violated Rule 26 because this excerpt cannot reasonably be construed as an opinion and the violation was prejudicial under Rule 37, citing to *Cochran v. Brinkmann Corp.*, No. 1:08-cv-1790-WSD, 2009 WL 4823858 (N.D. Ga. Dec. 9, 2009), *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010), and *Calhoune v. Ford Motor Co.*, No. 17-61702-CIV, 2018 WL 7287871 (S.D. Fla. Dec. 26, 2018) for support.

Defendant responds that Dr. Garcia provided a sufficient opinion on the degenerative condition in his timely filed initial expert report. Defendant contends that Plaintiff should have known that "Dr. Garcia considered Plaintiff's preexisting degenerative neck condition" and "addresses" the condition in his initial report. ECF No. [107] at 2. Regarding the two late supplemental reports, Defendant argues that, even if the late reports are a Rule 26 violation, there is no harm under Rule 37, and the supplemental reports should not be stricken.[3]

---

[3] Dr. Garcia's two late supplemental reports indicate they were both written because he received additional medical records to review. ECF No. [88-6] at 1; ECF No. [88-7] at 1. Dr. Garcia notes that

Plaintiff replies that Dr. Garcia conceded in his deposition that his opinion on the degenerative condition was only "sort of implied" in his initial report. ECF No. [118] at 2; Dr. Garcia Dep. at 62:1-7, ECF No. [92-46].

### 1. Rule 26 Violation

The Court finds that Dr. Garcia's references to Plaintiff's preexisting condition in his initial report cannot satisfy the Rule 26 requirements for a retained expert because the excerpts provided cannot reasonably be construed as providing "a complete statement of all opinions the witness will express and the basis and reasons for them." Moreover, the opinion Dr. Garcia expressed during his deposition linked this degenerative condition to his new, undisclosed causal theory that Plaintiff's neck fracture and lifelong injuries were either in part or in whole caused by the degenerative condition. There is no written opinion in Dr. Garcia's initial report on Plaintiff's degenerative condition, nor is there a written opinion explaining how the condition has a causal relationship with her injuries as he opined in his deposition.

> Q. Did -- did the accident that Ms. Martin-Viana had in November of 2022 on the cruise ship, the neck fracture, did that exacerbate any pre-existing condition?
> A. So I'm not sure if -- if I understand the question fully. But Ms. -- Ms. Martin sustained a very ser -- you know, serious potentially catastrophic injury in her neck. But if -- obviously if this was the result of -- of the -- the fall, of course. But also of pre-existing degenerative changes.
> Q. What does that mean?
> A. It -- it means that if Ms. Martin was – had a normal neck, she probably would not have sustained the spinal cord injury that she sustained.
> And what I'm saying is that part of the reason that she sustained the spinal cord injury is because -- obviously because of the fall that resulted in the fracture, but also because of the pre-existing degeneration.
> Dr. Garcia Dep. at 60:14-25, 61:1-4; 61:10-14, ECF No. [92-46].

---

following the review of the additional medical records, his prior opinions "remain unchanged" in both cases. *Id.* The Court also notes neither of the late reports contain any written opinions. Consequently, there is no basis to strike the supplemental reports as there are no opinions presented. Like Dr. Garcia, Plaintiff's retained orthopedic expert, Dr. Yacoubian, confirmed that after review of the additional medical records and Dr. Garcia's report, his opinions also remained unchanged. *Id.*; *see also* ECF No. [88] n. 3.

"Compliance with Rule 26 is 'not merely' an aspiration'" but a requirement intended to permit both sides to prepare their cases and prevent surprise. *Acosta v. Electrolux N.A.*, No. 08-60213-CIV, 2008 WL 5246160, at *5 (S.D. Fla. Dec. 16, 2008). A Rule 26 compliant written opinion must be contained in an expert report and "must be so complete that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Calhoune*, 2018 WL 7287871, at *1. In *Calhoune*, the court rejected an argument that an expert's affidavit, which contained only conclusory opinions, served as his expert report. *Id*. at *1. The court reasoned the argument that the expert opinions could be ascertained at deposition established that the written report was not compliant with Rule 26. *Id*. Similarly here, Plaintiff would only be able to ascertain the expert opinion in deposition as it was only "implied" and not "addressed" in the written reports, establishing the statement was not compliant with the standards for a Rule 26 expert opinion.

Here, Defendant at best argues Dr. Garcia's initial expert report "addresses" the preexisting degenerative condition. ECF No. [107] at 2. Even in his deposition, when challenged on the undisclosed opinion, Dr. Garcia only said "it's sort of implied" in his expert report. Dr. Garcia Dep. At 62:1-7, ECF No. [92-46]. Mention of a preexisting degenerative condition plainly falls short of the requirement for a "complete statement" of Dr. Garcia's opinions on the condition, and the basis for his opinions. For those reasons, Dr. Garcia's statements with the term "degenerative condition" does not satisfy the Rule 26 requirements for a written expert opinion with respect to either the purported degenerative condition or any causal relationship to Plaintiff's injuries.

### 2. Rule 37 Exclusion

Exclusion is not automatic upon failure to comply with Rule 26. *Jones v. Royal Caribbean Cruises, Ltd.,* No. 12–20322–CIV, 2013 WL 8695361, at *4 (S.D. Fla. Apr. 4, 2013). Consistent with *Izquierdo v. Certain Underwriters at Llyod's of London*, 2021 WL 3197008, at *4 (11th Cir. 2021), a non-compliant retained expert disclosure may not be used "unless the failure was substantially justified or is harmless." *Id.* at *4. Courts must consider four factors when determining if a failure to disclose is substantially justified or harmless: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc*., No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citation omitted).

The Court finds the first factor weighs in favor of exclusion. Common-sense indicates a potential preexisting degenerative condition either impacting or entirely negating Plaintiff's theory on causation is important. Dr. Garcia's undisclosed opinion directly undercuts her claim that the injury she sustained aboard *Freedom of the Seas* caused her neck fracture which resulted in serious, life-long injuries, and undercuts her potential claim for damages pertaining to those injuries. The power of an expert opinion related to causation is significant to Plaintiff's claim. Consequently, the first factor weighs in favor of exclusion of this late opinion.

Regarding the second factor, Dr. Garcia conceded this opinion was not properly disclosed in his report: "I don't know if I said it in those words. But it's sort of implied." Dr. Garcia Dep. at 62:5-7, ECF No. [92-46]. Dr. Garcia gave no reason why he failed to provide a Rule 26 compliant opinion for a retained expert. Defendant provides no explanation why it provided excerpts from medical records in lieu of providing a Rule 26 expert opinion. *Jones*, 2013 WL 8695361, at *4

14

("Allowing medical records to be submitted in lieu of a summary would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a 'summary.'") (quotations omitted). Accordingly, this deficiency weighs in favor of exclusion.

For the third factor, the Court finds Plaintiff was prejudiced. "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *De Fernandez v. Seaboard Marine, Ltd.*, No. 20-cv-25176, 2022 WL 2869730, at *3 (S.D. Fla. July 21, 2022) (citations omitted). Plaintiff was first introduced to the Defendant's opinion that the purported preexisting conditions have a causal relationship with her neck fracture during the expert's deposition on February 15, 2024, two weeks before the close of discovery. At that time, there was no functional ability to conduct further discovery, or a subsequent deposition of Dr. Garcia to determine the basis for his opinions. Defendant made no attempt to alert Plaintiff of those opinions before the scheduled deposition of its retained expert. Only a treating physician may opine on causation without a written report *if* those opinions are based on a history of examination and treatment of the patient, not an expert. *Torres*, 2018 WL 3729553, at *3.

In *Cochran*, the plaintiff sent an email the night before a deposition with notice it conducted additional testing on the product in dispute which bolstered a prior opinion the plaintiff offered. 2009 WL 4823858, at *2. The district court held the inability to pursue discovery based upon such untimely disclosures harmed the other party. *Id*. at 5; *aff'd sub nom. Cochran v. The Brinkmann Corp.*, 381 F. App'x 968 (11th Cir. 2010). Similar to *Cochran*, Defendant's disclosure surfaced at the deposition, leaving Plaintiff no meaningful ability to pursue discovery, supporting the argument she was harmed by the late disclosure. Accordingly, the prejudice to Plaintiff weighs in favor of exclusion.

Fourth and finally, a continuance would not be available on the eve of trial, nor would it be reasonable to permit one to cure Defendant's deficiency. After balancing the four factors, the Court strikes Dr. Garcia's late opinions pertaining to Plaintiff's preexisting degenerative condition and the causal relationship to the injury and neck fracture she sustained aboard *Freedom of the Seas*. Dr. Garcia is precluded from testifying at trial as to this opinion.

### ii. Ms. Delman's Rebuttal Testimony Has Been Withdrawn by Defendant

Defendant withdrew Ms. Delman as an expert witness. ECF No. [118] at 3. Accordingly, this portion of the Plaintiff's Motion is moot.

### iii. Dr. Fischer's Opinion as to Life Care Plans

Plaintiff seeks to preclude the "undisclosed opinions" of Dr. Kenneth C. Fischer, Defendant's neurology expert. ECF No. [88] at 15. Plaintiff argues Dr. Fischer gave new, undisclosed opinions on Plaintiff's life care plan during his February 1, 2024 deposition. *Id*. Dr. Fischer conceded that he did not include opinions regarding Plaintiff's life care plan in either his initial or supplemental expert reports. Dr. Fischer Dep. At 101:4-16, ECF No. [92-63]. Plaintiff argues Defendant had sufficient time to provide his opinion in the written reports or file a motion for leave to file a late opinion. *Id*. at 16. Plaintiff requests that Dr. Fischer's undisclosed opinions be stricken for failure to comply with Fed. R. Civ. P. 26(a)(1) and cites to *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008) for support.

Defendant responds that Dr. Fischer's January 24, 2024 supplemental report indicated he reviewed Plaintiff's expert report as to the life plan, opined Plaintiff was improving, and attacked the expert in his written reports. ECF No. [107] at 3. Defendant argues this was enough to reveal Dr. Fischer "had his opinions" and Plaintiff cannot establish prejudice. *Id*. Even if Plaintiff *could* establish prejudice, Defendant argues Plaintiff must then show she tried to work with opposing

counsel to remedy the deficiency. *Id.*; *see Maylor v. Wal-Mart Stores East, LP*, Case No. 22-22782-CIV, 2023 WL 4363889, at *3 (S.D. Fla. June 8, 2023) (citations omitted).

Plaintiff replies that she had no notice of Dr. Fischer's expert opinion on the life care plan and notice of an expert opinion does not provide any knowledge of the actual opinions. ECF No. [118] at 3-4. Plaintiff argues her counsel first heard of the opinions at the deposition. Dr. Fischer Dep. at 101:4-16, ECF No. [92-63]. Plaintiff did not respond regarding her duty to work with opposing counsel on disclosure deficiencies consistent with *Maylor*.

## 1. Rule 26 Violation

Under *Cedant*, Dr. Fischer is considered a retained expert for litigations purposes, and therefore was required to provide a detailed and extensive Rule 26(a)(2)(B) pretrial disclosure. 75 F.4th at 1317; *see generally* Dr. Fischer Dep. at 35-38. That disclosure includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26 (a)(2)(B)(i). Dr. Fischer conceded he failed to do this, which is plainly a Rule 26 violation. As an initial matter, neither party supplies helpful support on the issue of whether Dr. Fischer provided an expert opinion consistent with Rule 26. Plaintiff's reliance on *Reese v. Herbert,* 527 F.3d 1253 (11th Cir. 2008), is unavailing as the submission was almost seven weeks after the discovery deadline expired. Defendant's reliance on *Maylor* is also misplaced as that holding pertained to an expert report wherein the expert had informed the parties that he intended to file a forthcoming supplemental report. 2023 WL 4363889, at *2. Nevertheless, a Rule 26 compliant expert report "must be so complete that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial [and] shorten or decrease the need for expert depositions and thus to conserve resources.'" *Calhoune*, 2018 WL 7287871, at *1.

Dr. Fischer was provided Ms. McKenzie's life care plan on January 16, 2024, and issued his supplemental report on January 22, 2024. ECF No. [88] at 16; ECF No. [92-65]. Dr. Fischer's supplemental report lists Ms. McKenzie's life care plan under materials included in his review and addresses some points from her report, such as Plaintiff's statement that she cannot drive a car due to numbness in her hands and feet, a neurological re-evaluation indicating Plaintiff was improving, and notes on a follow-up MRI. ECF No. [92-65] at 2-4. Although Dr. Fischer concluded with the statement that the "additional opinions proffered in this report are all within reasonable medical certainty," the report lacks a Rule 26 compliant written opinion pertaining to the life care plan authored by Ms. McKenzie. ECF No. [107-1] at 3. Defendant argues it can establish that Dr. Fischer satisfied Rule 26 because he opined that Plaintiff's claim that she could not drive lacked a basis. However, in the supplemental report, Dr. Fischer suggested a further evaluation by an occupational therapist to assess the issue. The suggestion that a different expert should be hired to opine on the issue is not proof that Dr. Fischer provided a Rule 26 compliant written report. Fed. R. Civ. P. 26 (a)(2)(B)(i); *see* ECF No. [92-65] at 3.

Moreover, Defendant fails to engage with the actual opinion Dr. Fischer disclosed at his deposition on Ms. McKenzie's life care plan, including how often Plaintiff should see a neurologist, whether certain drugs like baclofen are necessary, the need for home health care, and how many MRI scans Plaintiff should have per year. Dr. Fischer Dep. at 114:1-6, 119:18-22, 120:21-24, 123:19-21, ECF No. [92-63]. Those opinions do not appear in his supplemental report and the Court finds Dr. Fischer's supplemental report with respect to Ms. McKenzie's life care plan is not compliant with Rule 26. Therefore, a Rule 37 analysis is required using the four factors as provided in *Torres*, 2018 WL 3729553, at *2.

### 2. Rule 37 Exclusion

Regarding the first factor, Dr. Fischer's testimony was important. The life care plan is a comprehensive plan providing a breakdown of expenses that Plaintiff is projected to incur over the course of her life due to the injuries allegedly resulting from the fracture in her neck. The plan covers medical treatments, medication, diagnostics, therapy, equipment, attendant care, and transportation. ECF No. [92-66]. Each of the expense projections are for life, unless otherwise noted. *Id*. Dr. Fischer opined the life care plan providing for a cervical spine MRI scan every other year was not necessary; the cost is $3,883.78 per scan. *Compare* Dr. Fischer Dep. at 120:21-24, ECF No. [92-63]; *with* ECF No. [92-66] at 2. Similarly, Dr. Fischer offered his opinion that a neurologist was only needed once per year, not four times per year; the cost of each neurologist visit is estimated at $308.24. *Compare* Dr. Fischer Dep. at 114:1-6, ECF No. [92-63]; *with* ECF No. [92-66] at 1. Similar opinions attack the use of the medicine, baclofen, which costs $985.50 per year, a home health aide which would cost $40.00 per day or $14,600.00 per year through the age of 69, and the increase after that age were all addressed in his undisclosed opinion revealed at deposition, but not contained in his written reports. *Compare* Dr. Fischer Dep. at 119:18-22, 123:19-21, ECF No. [92-63]; with ECF No. [92-66] at 2-3. Consequently, the first factor weighs in favor of exclusion of this late opinion.

The second factor considers the explanation provided for the failure to comply with the Rule 26 disclosure requirements. Dr. Fischer was provided Ms. McKenzie's life care plan on January 16, 2024, and issued his supplemental report on January 22, 2024. ECF No. [88] at 16; ECF No. [92-65]. Dr. Fischer provided no explanation why he did not disclose his opinions:

> Q. Okay. I'm going to get into those. Do you agree that none of the issues that you have with Ms. McKenzie's Life Care Plan are actually stated in your supplemental report?
> MR. CRAVEN: Object to the form.

A. That is true, but I'll be glad to discuss them today so you'll know exactly what they are.

Q. I'm going to ask you about them. I just want to point out the fact that you recognize that me asking you about them, it will be the first time that I'm hearing about them, right?

A. That's fair. That's true, yes.

Dr. Fisher Dep. at 101:1-16, ECF No. [92-63].

Defendant did not provide an explanation, and instead argued the supplemental report provided the opinions sufficiently. The Court has already rejected that argument and the second factor weighs in favor of exclusion of this late opinion.

For the third factor, the prejudice experienced by Plaintiff is sufficient based on prevailing case law. "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *De Fernandez*, 2022 WL 2869730, at *3 (citations omitted). Without knowing that Dr. Fischer had these opinions related to the life care plan authored by Ms. McKenzie, there was no ability to effectively depose Dr. Fischer on those medical and financial issues. Accordingly, the Court finds Plaintiff was prejudiced, which weighs in favor of exclusion.

Fourth and finally, a continuance would not be available on the eve of trial, nor would it be reasonable to permit one to cure Defendant's deficiency. After balancing the four factors, the Court strikes Dr. Fischer's opinion on Plaintiff's life care plan issued by Ms. McKenzie. Dr. Fischer cannot testify on his late opinions related to the life care plan at trial.

## B. Defendant's *Daubert* Motion

Defendant moves to exclude the testimony of Randall Jacques ("Jacques"), Dr. Richard Seely ("Dr. Seely"), and Leonard Backer ("Backer") as expert witnesses and to preclude use of their opinions pursuant to Fed. R. Evid. 702. ECF No. [87] at 1. Jacques is a Maritime Safety Consultant and Accident Analysis Investigator; Dr. Seely is an expert psychiatrist; and Backer is a seating and chair expert. *Id*. at 1-3.

### i.   Jacques' Opinions: Qualified, Reliable, and Helpfulness Analysis

Defendant argues Jacques should be precluded from offering any testimony at trial because he fails all three prongs under *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004), used in this Circuit to assess the propriety of expert testimony, referred to as the "qualifications," "reliability," and "helpfulness" prongs. *Id*. at 1260. First, Defendant argues Jacques is not qualified because his experience and education are not applicable. ECF No. [87] at 6. Defendant claims he "has often been stricken by courts in this district" under *Daubert*. *Id*. at 6-7. Defendant adds Jacques fails the reliability prong because he provided no basis for his conclusions, did not indicate what his reliable methodology entailed, and conducted no demonstrable analysis. *Id*. at 8-9. Defendant claims Jacques' statements are conclusory, given without a proper foundation, and his submissions fail to offer any studies or authorities to support his opinions. *Id*. at 7; *see Webb v. Carnival Corp.*, 321 F.R.D. 420 (S.D. Fla. 2017) Finally, Defendant argues Jacques' testimony is unhelpful because it does not go beyond what the average lay person understands. *Id*. at 9.

Plaintiff responds that Jacques is a qualified expert with over fifteen years of experience as a security officer for thirteen different cruise ships. ECF No. [108] at 4. Plaintiff relies on *Cowley v. Sunset Yacht Charters, Inc.,* 2011 WL 2938431 (S.D. Fla., July 19, 2011) which held "experience in 'the operation, navigation, and maintenance of vessels [and] maintenance of docks, piers, and aids to navigation'" were sufficient qualifications to survive a *Daubert* inquiry. *Id*. at *5. Plaintiff also relies on *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999) that "relevant reliability concerns may focus upon personal knowledge or experience." *Id*. at 251. Plaintiff points out that Jacques has extensive experience, and investigated over 2,000 shipboard accidents, and over 600 other maritime and shore excursion related incidents for major cruise line companies. ECF No. [108] at 5. Plaintiff contends Jacques "is well qualified to opine in the areas offered here." *Id*. at 6. Finally, Plaintiff cites "numerous other cases" in this district where Jacques' *Daubert*

testimony was accepted, and all cases Defendant relied on are distinguishable. *Id*. at 5. As to reliability, Plaintiff argues Jacques authored "two extensive reports" explaining the methodology which incorporated applicable safety codes, inspection of the premises, and accident reconstruction. *Id*. at 8. Plaintiff reasons this satisfies the "reliable methodology" inquiry in *Daubert*. Plaintiff did not directly address the helpfulness prong.

Defendant replies that Plaintiff bears the burden of establishing use of Jacques' opinions satisfy *Daubert*, but has failed to do so. ECF No. [122] at 2. Defendant argues his qualifications are not satisfactory as "[s]imply having worked on a cruise ship that has chairs does not equate to expertise in a chair that happens to be on a cruise ship." *Id*. With respect to the reliability prong, Defendants argue Jacques offered no opinions on the locking mechanism of the subject chair, thus "his opinions on other matters are irrelevant." *Id*. at 2. Defendant also reasons there is no actual data — values, figures, etc. — used in his methodology. *Id*. Additionally, Defendant points out that Plaintiff did not directly address the helpfulness prong and has failed to establish that Jacques is qualified, reliable, and helpful. *Id*.

The Court finds that Plaintiff has satisfied her burden to offer Jacques as an expert in maritime safety. His role as security officer and investigator for many major cruise lines demonstrates his qualifications by a preponderance of the evidence. Jacques has established qualifications in accident reconstruction, as he was trained at the Institute of Police Technology and Management, Advanced Accident Reconstruction School, and the University of Miami. Jacques Dep. At 17:2-21, ECF No. [92-58]; *see also* ECF No. [103-3]. Defendant's contention that Jacques has been precluded from providing expert testimony previously is unsupported by any authority indicating a bar to his ability to provide future expert testimony. It also ignores that

Jacques has testified as an expert in this district. Accordingly, there is sufficient basis to conclude Jacques is qualified.

The Court also finds a sufficient basis to conclude Jacques' methodology is reliable. Although Defendant faults Jacques for lack of a basis, the record indicates he recreated the incident in Plaintiff's original quarters aboard the *Freedom of the Seas*, used weights in representative dimensions, and devised multiple testing methods to establish his methodology. Moreover, when pressed on whether he had "training or engineering experience" allowing him to "calculate scientific equations regarding the weight needed to cause [the] chair to tip backwards," Jacques provided his experience and explanation. Jacques Dep. at 20:9-15, ECF No. [92-58]. Regarding helpfulness, the methodology used is sufficiently connected to the pertinent inquiry in this case. A trier of fact will benefit from Jacques' testimony. Defendant may test the veracity of Jacques' opinions on cross-examination, and the jury will evaluate the weight to be given to the testimony. Accordingly, Plaintiff has met her burden to establish admissibility of Jacques' opinions and Defendant's *Daubert* Motion to Strike is denied.

### ii. Dr. Seely's Opinions: Reliable and Helpfulness Analysis

Defendant seeks to preclude the opinions of Plaintiff's expert psychiatrist, Dr. Richard Seely, arguing '[n]o analysis or testing of any kind was conducted and therefore no meaningful methodology exists' in violation of *Daubert*, 509 U.S. 579, and *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F.Supp.3d 1120 (S.D. Fla. Sept. 19, 2014). Defendant faults Dr. Seely's expert report as based only on Plaintiff's medical history, notes from his interview with Plaintiff's daughter, and a review of the record. ECF No. [87] at 11. Further, Defendant argues Dr. Seely failed to conduct tests that were available and as he failed to identify other methodologies he could employ, and his opinions are unreliable. *Id.* at 12. Additionally, Defendant contends Dr. Seely knew Plaintiff was diagnosed with anxiety and a major depressive disorder prior to the accident, and as her daughter

is currently dealing with a significant cancer diagnosis, a differential diagnosis to rule out alternative causes of her psychological condition was warranted. *Id*. at 13. Defendant's argument that Dr. Seely will not be helpful to a jury is based on Defendant's attack on his reliability. Defendant claims his opinion requires ignoring her pre-existing anxiety and her daughter's illness, which does not help illuminate matters beyond the understanding of the average lay person. *Frazier*, 387 F.3d at 1262.

Plaintiff responds that Dr. Seely's expert testimony is reliable and helpful. As to reliability, Plaintiff cites to *Kumho* for support that "an expert may draw a conclusion from a set of observations based on extensive and specialized experience." 526 U.S. at 156. Plaintiff argues Dr. Seely is experienced as a practicing psychiatrist for more than forty years, with over 150,000 treated patients, and relies on diagnostic and statistical manuals. ECF No. [108] at 10, 14. Moreover, Dr. Seely's intake interviews took hours to conduct and resulted in his analysis that Plaintiff met "eight of nine diagnostic criteria for major depressive disorder." *Id*. Plaintiff contends Dr. Seely did conduct a proper differential diagnosis using the "rule in" and "rule out" methodology, with applicable diagnostic techniques, citing to various cases for support. *Id*. at 13. Plaintiff also points out that Dr. Seely considered the significant health problems Plaintiff's daughter faces and the resulting stress.

With respect to helpfulness, Plaintiff relies on *Castro v. Carnival Corp.*, No. 21-20373-cv, 2022 WL 3048255 (S.D. Fla. July 11, 2022) and reasons Dr. Seely's opinions will be helpful to the jury as Plaintiff's "medical state is complex." *Id*. at 15.

Defendant replies that Dr. Seely conducted no analysis or "testing of any kind," there was no meaningful methodology, and her explanation on how Dr. Seely conducted a differential diagnosis was inadequate, rendering his opinions unreliable. ECF No. [122] at 3. Defendant

maintains Dr. Seely "wholly disregarded her pre-existing conditions and ancillary situation as well as her daughter's health condition," and his opinions are therefore unhelpful to a jury. *Id*. at 4.

Defendant's challenges to Dr. Seely's reliability and helpfulness are unpersuasive. Regarding reliability, Defendant argues no testing or other identified methodology exists in Dr. Seely's testimony, just *ipse dixit*. A review of the record clearly indicates otherwise. Plaintiff was careful to note the detailed nature of Dr. Seely's differential diagnosis which is a "patient specific process of elimination." *Ruggiero v. Warner-Lambert Co*., 424 F.3d 249, 254 (2nd Cir. 2005). Dr. Seely testified that he reviewed all of Plaintiff's medical history — thousands of pages — and known psychological stressors to arrive at a comprehensive list of theories affecting Plaintiff's mental condition, to satisfy the initial "rule in" phase of a differential diagnosis. ECF No. [108] at 13. Dr. Seely acknowledges that the cancer diagnosis of Plaintiff's daughter was a possible cause of Plaintiff's symptoms. In the "rule out" second part of the analysis, an extensive review of the records was conducted, and he considered the daughter's cancer diagnosis. Defendant fails to present a meaningful response to the contention that "in the fields of psychology and psychiatry. . . the primary method of diagnosing a patient is based upon" clinical knowledge and interviews. *United States v. Minter*, No. 312CR00004TCBRGV, 2014 WL 12792618, at *11 (N.D. Ga. June 17, 2014). This clinical knowledge, in combination with the expertise Dr. Seely has developed in his forty years treating patients, establishes a sufficient basis for reliability by a preponderance of the evidence.

As to helpfulness, as Plaintiff argues, the alleged damages involved in this case are medically complicated. Moreover, specific to psychology and psychiatry, clinical experience is the primary means of diagnosis. Plaintiff established a helpful, "valid scientific connection to the

pertinent inquiry." *Daubert*, 509 U.S. at 592. A trier of fact will benefit from Dr. Seely's testimony and, accordingly, Plaintiff has met her burden and Defendant's Daubert Motion to Strike is denied.

### iii. Leonard Backer's Opinions: Reliable and Helpfulness Analysis

Defendant argues the opinions of Leonard Backer ("Backer"), Plaintiff's expert retained to opine on seating, tables, and furniture in hospitality settings, should be stricken for failing the reliability and helpfulness prongs under *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). Regarding the reliability prong, Defendant argues Backer did not employ a discernable methodology and instead relied "entirely" on the testimony of Jacques. ECF No. [87] at 15. Further, Defendant claims Plaintiff's theory of liability is based on the locking mechanism of the subject chair: because Backer testified the chair's locking mechanism did not fail, there is an impermissible gap between the facts of this case and Backer's opinions. *Id*. at 18. Regarding helpfulness, Defendant asserts Backer adopted Jacques' methodology "virtually in whole" and therefore has nothing to offer the jury. ECF No. [87] at 19.

Plaintiff responds that Backer's "approach was comprehensive, considering the Defendant's own safety expert's opinion, reviewing documents" from the manufacturer. ECF No. [108] at 18. Plaintiff also provides a Declaration from Backer, ECF No. [108-6], wherein he describes his methodology in further detail. Backer testified that his methodology consists of applying his "over 33 years of experience … in seating design, construction, selection, and placement including the design, construction, selection, and placement of seating in cruise ships, hotels, and hospitality to reach my opinions in this case." ECF No. [108-6] ¶ 5.

Backer further explains his opinions are based on his review of "all relevant materials that are specific to this case," including Plaintiff's deposition, photographs, and videos of the subject chair and balcony, inspections and measurements of the subject chair and balcony, the manufacturer's product warranty and maintenance instructions, and Jacques' expert report and

field test. *See id*. ¶¶ 6-7. Relevant here, Backer also testified that he relied on the following evidence "to reach my opinions regarding the safety of the subject lounge chair on the balcony": (1) Zorilla's deposition testimony explaining the subject chair was not supposed to be on Plaintiff's balcony[4]; (2) Backer's inspection of the subject chair; (3) Backer's inspection of the balcony "by virtue of the blueprints with measurements provided by the Defendant[]"; (4) the measurements of the subject chair and balcony; (5) Campos's deposition testimony "regarding the existence of any verbiage or narrative from [the] manufacturer[]"; (6) the manufacturer's documents providing the subject chair should be laid flat for shipping purposes only; and (7) Plaintiff's deposition testimony. *See id*. ¶ 11. Regarding helpfulness, Plaintiff contends Backer's anticipated testimony will assist the jury in determining whether any danger posed by the subject chair was open and obvious.

Defendant replies Mr. Backer relied "almost exclusively" on Jacques' opinions and undertook almost no analysis. ECF No. [122] at 4. Finally, Defendant contends Backer did not testify that the chair's locking mechanism failed, he "only mused the chair could have been bolted to the balcony floor." *Id*. at 5.

As noted, Defendant contends Backer's opinion is unreliable because the record demonstrates Backer's "methodology" consisted of little more than reiterating the findings from Jacques' expert report and field testing. For support, Defendant cites to portions of Backer's deposition testimony where Backer notes he did not speak to Plaintiff about the incident, nor did he inspect the balcony where the incident occurred. *See* ECF No. [87] at 16-17. The Court disagrees.

---

[4] Backer received the errata sheet pertaining to Zorilla's testimony "last minute" after Baker prepared his reports. Backer Dep. at 8:1-4, ECF No. [92-61]. Nevertheless, because Defendant filed an errata sheet after Backer's reports were completed has no bearing on Backer's methodology.

As Plaintiff correctly points out, Backer's methodology was more comprehensive than simply relying on Jacques' findings. For example, Backer testified that he reviewed the notice from the manufacturer regarding the limited use of the flat position of the chair within a commercial environment, measured the chair, and conducted a personal inspection of the chair, among other things. Backer Dep. at 19:13-23, 27:15-24, 35:1-7, ECF No. [92-61]. Furthermore, Backer's Declaration makes clear his methodology consists of conducting a comprehensive review of the record evidence and applying his "over 33 years of experience … in seating design construction, selection, and placement" to form his opinions in this case. ECF No. [108-6]. As held in *Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999)* "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id*. at 156. Defendant does not argue this methodology is generally unreliable, nor does it challenge Backer's qualifications. Instead, Defendant challenges Backer's methodology based on its assertion that Backer relied "entirely" on Jacques' findings and opinions. ECF No. [87] at 15. However, Defendant's assertion is flatly contradicted by Backer's testimony regarding the methodology he employed in this case. Defendant's reply does not acknowledge Backer's Declaration at all, let alone explain why the methodology described therein is unreliable. Defendant has thus failed to show that Backer's methodology is unreliable.[5] Conversely, Plaintiff has demonstrated Backer's

---

[5] Defendant also argues Backer's opinions are unreliable because Backer testified that the subject chair's adjustment rod broke, not its locking mechanism. According to Defendant, this demonstrates Backer's opinions are unreliable, as "Plaintiff's entire theory of liability is premised on the notion that the locking mechanism on the chair broke causing Plaintiff's injuries." ECF No. [87] at 17. As discussed below, however, the Court disagrees that Plaintiff's theory of liability is restricted to demonstrating the subject chair caused her injuries because the locking mechanism broke. Plaintiff may meet her burden by simply showing the chair constitutes a dangerous condition that caused her injuries — regardless of the precise manner in which the chair did so. Defendant has accordingly failed to show Backer's opinion is unreliable on this basis.

methodology is sufficiently reliable. The Court accordingly finds that Backer's opinions satisfy *Daubert's* reliability prong.

The Court also finds Backer's testimony is helpful. Defendant's contention that Backer's testimony is merely an adaptation of Jacques' testimony and therefore unhelpful to a jury is without merit. As discussed, this argument is contradicted by the record. For her part, Plaintiff contends Backer's anticipated testimony is helpful because Backer is "uniquely positioned to assist the jury in comprehending the intricacies of proper chair design and its implementation in a cruise ship setting." ECF No. [108] at 20. Plaintiff notes this testimony is particularly helpful to assist the jury in determining whether the danger posed by the subject chair was open and obvious. *Id*. Defendant asserts in its reply "[t]here is nothing in Mr. Backer's opinions that a lay person needs expert guidance on[,]" ECF No. [122] at 5, but fails to articulate why this is the case. Defendant has therefore failed to raise a sufficient basis to exclude Backer's testimony. Conversely, Plaintiff has demonstrated Backer's testimony is helpful in determining whether the chair posed an open and obvious danger. Accordingly, Plaintiff has met her burden to establish admissibility of Backer as an expert, and Defendant's *Daubert* Motion to Strike is denied.

### C. Plaintiff's *Daubert* Motion

Plaintiff moves to exclude the testimony and the opinions of Defendant's experts pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Fed. R. Evid. 702. ECF No. [89] at 1. The *Daubert* Motion pertains to Dr. Garcia, Defendant's orthopedic specialist, Dr. Tyler Kress, Defendant's Biomedical, Ergonomic, and Safety Engineer, and Dr. Fischer, Defendant's neurology expert. *Id*.[6]

---

[6] Plaintiff originally moved to exclude the testimony of Ms. Delman, a vocational expert retained for as a rebuttal expert. ECF No. [89] at 1. Defendant withdrew her testimony as the record indicated Plaintiff returned to work, therefore her testimony can be stricken as moot. ECF No. [106] at 4.

### i.   Dr. Garcia's Testimony on Plaintiff's Preexisting Degenerative Condition

Plaintiff moved to strike the same testimony as to the preexisting degenerative condition and any potential causal relationship with her injuries under a Rule 26 and Rule 37 analysis. The Court has already grated her Motion as to Dr. Garcia's opinions on this issue and need not conduct a *Daubert* analysis as well. The opinion is already stricken.

### ii.   Dr. Kress' Testimony

Plaintiff moves to exclude the testimony of Dr. Kress on the basis he is not qualified, and his testimony is unreliable. Plaintiff argues Dr. Kress is unqualified to be an expert in this matter "because he has never worked in the cruise ship industry [or] as a safety officer aboard any kind of vessel, and has never worked in furniture design." ECF No. [89] at 9. Next, Plaintiff contends Dr. Kress' testimony is unreliable because he testified that he *could* see Plaintiff adjust the chair to the lay flat position in the CCTV footage of the incident. *Id*. Plaintiff argues the video quality is so poor, this testimony is conjecture at best, which does not satisfy *Daubert* reliability requirements. *Id*.

Defendant responds that it sufficiently established Dr. Kress is qualified, as demonstrated by the many advanced degrees Dr. Kress earned in relevant scientific subjects supporting his qualifications to testify as a mechanical engineer and "human factors expert." ECF No. [106] at 3. Defendant points out that Dr. Kress testified he has "consulted a lot in seat design and provided design advice extensively" which Plaintiff's motion acknowledged. *Id*.; Dr. Kress Dep. at 135:20-22, ECF No. [92-35]. Defendant faults Plaintiff for basing the entirety of her reliability challenge on video quality. ECF No. [106] at 3.

Plaintiff replies to maintain her position that Dr. Kress' Rule 26 report reveals he has no cruise ship experience, but she does not engage with the argument that Dr. Kress has extensively consulted on chair design. ECF No. [119] at 5. Plaintiff also maintains her original position that

the CCTV quality is too poor for Dr. Kress to claim he watched Plaintiff adjust her chair in the video. *Id*. at 4. For these reasons, Plaintiff believes Dr. Kress' testimony should be excluded. *Id*. at 5.

The Court does not find deficiencies in Dr. Kress' qualifications or reliability of methodology. With respect to Plaintiff's reliability argument, Plaintiff's issue regarding Dr. Kress' reliance on the CCTV footage in evidence and used by other experts in this case is inconsistent with the reliability of the methodology inquiry provided in *Frazier*, 387 F.3d at 1260. *See also Daubert*, 509 U.S. 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."). Plaintiff's contention does not warrant exclusion of Dr. Kress' testimony. *Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 WL 1228063, at *11 (S.D. Fla. Mar. 14, 2019) (citing *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact.")).

Plaintiff's attack on Dr. Kress' qualifications are solely based on her assertions. She failed to provide any pertinent authority that an expert must have direct experience working with cruise lines to withstand exclusion. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. Apr. 1, 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") (internal quotations and citation omitted). For these reasons, Plaintiff's *Daubert* motion with respect to Dr. Kress is denied.

### iii.  Ms. Delman's Testimony Has Been Withdrawn

Plaintiff initially sought to exclude the testimony of Ms. Delman, Defendant's vocational expert. ECF No [89] at 12. However, Defendant withdrew her as an expert, and this portion of the Motion is moot.

### iv. Dr. Fischer's Testimony

Plaintiff seeks to exclude the testimony of Dr. Fischer, Defendant's expert neurologist pertaining to Plaintiff's future medical care because it is unreliable and unhelpful to a jury. ECF No. [89] at 16. Plaintiff argues Dr. Fischer concedes she is not at maximum medical improvement; thus, the state of her injuries is unsettled and cannot be opined upon for that reason. *Id.* As such, Dr. Fischer has no basis to opine on her future medical care. *Id.* Plaintiff cites to no authority for her argument.

Defendant responds that, as a neurologist, Dr. Fischer may opine on Plaintiff's future care prior to her reaching maximum medical improvement. ECF No. [106] at 4. Defendant claims Plaintiff's argument cites to no authority because no authority exists for her position. *Id.* Plaintiff replies by repeating the same argument in her motion, again without citations to legal authority.

The Court finds this purported deficiency in Dr. Fischer's testimony does not bar admission of her testimony. Under *Daubert* the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 595. Plaintiff's contention does not warrant exclusion and may on cross-examination "ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co*., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Moreover, as with the *Daubert* motion to exclude Dr. Kress, the Court notes Plaintiff failed to provide any pertinent authority to press her point, alternatively warranting denial. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. Apr. 1, 2019). For those reasons, Plaintiff's *Daubert* motion with respect to Dr. Fischer is denied.

**D.  Defendant's Motion for Summary Judgment**

Defendant moves for summary judgment on three grounds: Plaintiff failed to establish the existence of a dangerous condition of which Defendant should have been aware; proper use of the subject chair is an open and obvious condition which negates any duty to warn; and there is a lack of notice of a dangerous condition.

### i.  Evidence of a Dangerous Condition

Defendant argues "there is no evidence establishing that any dangerous condition existed." ECF No. [86] at 4. Defendant contends that Plaintiff shifted her body weight backwards in the chair "causing her own unfortunate injury" which can be detected in the CCTV footage. *Id*. Defendant also argues that two experts testified it was Plaintiff who moved her body in a manner which caused the chair to tip backwards, and the locking mechanisms did not fail. *Id*. Defendant cites to *O'Brien v. NCL (Bahamas) Ltd.*, 288 F.Supp.3d 1302 (S.D. Fla. Dec. 28, 2017) and argues that Plaintiff has the burden to produce "any admissible evidence that a dangerous condition existed" because an injury alone does not establish the presence of a dangerous condition. *Id*.

Plaintiff responds that the record contains "ample evidence of a dangerous condition" namely, the express warning issued directly from the manufacturer to Defendant that the chair is only to be laid flat "for shipping purposes only." ECF No. [109] at 6. Plaintiff points out the chair manufacturer testified this warning means the chair is not to be lounged on like a chaise. *Id*.; Zhang Dep. at 61:4-8, ECF No. [92-17]. Despite this express warning to Defendant, its passengers were not warned, including Plaintiff. Moreover, there was no mechanism to prevent a passenger from lying flat, leaving passengers in danger and without warning. ECF No. [109] at 7. Plaintiff contends that is another reason the locking mechanism was inadequate. *Id*. Plaintiff disputes that her expert, Ms. Albert, testified that Plaintiff caused her own fall, but that the lack of warning,

coupled with the lack of attaching the chair to the floor to prevent it tipping over, caused the injury. *Id*.; Albert Dep. at 11:8-19, ECF No. [92-57].

Plaintiff also points out that the cases Defendant relies upon are distinguishable given the underlying facts and claims in those cases. As the non-movant on summary judgment, Plaintiff argues the evidence should be weighed in the light most favorable to her, and a reasonable jury could find the chair presented a dangerous condition.

Defendant replies there is only one factual basis in Plaintiff's Complaint, that when she sat on the subject chair, the locking mechanism failed causing Plaintiff to fall backwards. ECF No. [121] at 2. Defendant argues a "plaintiff is limited to the claims in his complaint." *Beckwith v. Caliber Homes Loans, Inc.,* No.: 3:20-cv-00407-LCB, 2022 WL 1631972, at *8 (N.D. Ala. 2022) (citing to *Gilmour v. Gates*, *McDonald & Co*., 382 F.3d 1312 (11th Cir. 2004)). Defendant argues there is no record evidence supporting the allegation that the locking mechanism failed, thus, the dangerous condition Plaintiff alleged in her Complaint "does not exist mandating summary judgment." ECF No. [121] at 2. Defendant argues summary judgment is warranted because Plaintiff's Complaint included a factual allegation regarding the locking mechanism and has sought to constrain the entire action based upon that initial factual allegation.

It has long been held in the Eleventh Circuit that a complaint must be adequate to put a defendant on notice of the claims against it consistent with the liberal pleading standards of the Federal Rules of Civil Procedure. *See Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co. Inc.*, 932 F.2d 1443, 1448 (11th Cir. 1991). In *Vertex*, the defendant argued the plaintiff was not entitled to certain records because they were not specifically referenced in the complaint. *Id*. The court determined that the main point of contention between the parties encompassed the records sought, therefore the allegations were sufficient to put the defendant "on

notice of the claims against it." *Id. see Sams v. United Food & Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir.1989) (citations omitted) ("A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.").

Defendant's reliance on *Beckwith* and *Gilmour* is unavailing since, in those cases, the defendants' first notice was through the plaintiffs' responses to motions for summary judgment. *see Beckwith*, 2022 WL 1631972, at *8 ("Beckwith's other purported good faith and fair dealing arguments are barred because he raises them for the first time in his response."). In *Gilmore*, the movant "had no notice of a contract claim based on the tort claims set forth in the complaint." 382 F.3d at 1315. To the contrary, Plaintiff's Complaint is sufficient to put Defendant on notice that the claim relates to whether the chair was sufficiently safe such that it would not fail in the flat position when used by a passenger.

Regarding the evidence of a dangerous condition, the following testimony by Patricio Zorilla, Chief Security Officer, demonstrates that Defendant permitted passengers to use the chair however they wished:

> Q: But if they're not supposed to have a chair that reclines backwards, why do you give them one that does recline backwards?
> A: That is their discretion.
> Zorilla, Dep. at 114:1-6, ECF No. [92-25][7]

The following excerpt from the deposition of Amanda Campos, Director of Guest Claims and Litigation, demonstrates the same:

> Q. If a stateroom attendant saw that the chair in question was on someone's balcony in a lie-flat position, should they upright it into one of the two fixed positions?
> A. Not necessarily because somebody might have put it that way to dry clothing on. We see that. That does happen.
> Q. What if there's no clothing on it though?

---

[7] This testimony was not refuted in Mr. Zorilla's errata sheet, ECF No. [74-2].

A. Well, they might have taken the clothing off, and that's the purpose they want to use it for, to dry clothing on or place towels on; they want them to dry off.
Campos Dep., at 63:9-24, ECF No. [92-25].

As Defendant noted, it is Plaintiff's burden to "produce any admissible evidence that a dangerous condition existed." *O'Brien*, 288 F.Supp.3d at 1309.

Viewing the evidence in the light most favorable to Plaintiff as the non-movant, Defendant fails to demonstrate that summary judgment is warranted and that there is no evidence of a dangerous condition. The record instead contains evidence supporting Plaintiff's position that Defendant was warned that use of the chair in the flat position was for shipping purposes only, yet Defendant permitted use of the chairs in a flat position without providing a warning to its passengers. Defendant's reliance on the CCTV video to establish that Plaintiff was the cause of her fall by moving her weight back too far is challenging at summary judgment and insufficient to overcome the issue of whether a dangerous condition existed. Defendant has not met its burden to show there is an absence of a genuine issue of material fact on this issue and a reasonable trier of fact could return judgment for Plaintiff as non-movant. As such, Defendant is not entitled to summary judgment with respect to the lack of evidence of a dangerous condition.

### ii. Open and Obvious Condition

Defendant seeks summary judgment that there was no duty to warn based on the open and obvious nature of use of the subject chair. ECF No. [86] at 7. Defendant argues an open and obvious condition is one "that should be obvious by the ordinary use of one's senses." *Id*.; citing *Poole v Carnival Corp.*, No. 14-cv-20237, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015). Further, Defendant argues its duty of reasonable care only includes a duty to warn of dangers "which may not be apparent to a reasonable passenger." *Frasca v. NCL (Bahamas) Ltd*., No. 12-20662-CIV, 2014 WL 1385806, at *18 (S.D. Fla. Apr. 9, 2014). Defendant maintains the danger arose when Plaintiff shifted her body weight beyond the base of support of the subject chair, and

tipping a chair is an open and obvious danger which Defendant had no duty to warn of. ECF No.
[86] at 7. Defendant cites to *Rafflo v. Gymboree Retail Stores, Inc.*, 2013 WL 3770844, (M.D. Fla.
July 19, 2013) to argue that courts in this district have awarded summary judgment to storeowners
for claims a patron tipped a chair over causing injury.

Plaintiff responds that the subject chair's condition was not open and obvious. Plaintiff
argues that, because the manufacturer felt it must inform users to not lay flat for personal use, the
danger of the lay flat position cannot be considered an open and obvious condition. ECF No. [109]
at 10. Plaintiff points out that Defendant's experts testified it was reasonable to use the subject
chair in the flat position, and Plaintiff did nothing wrong or unreasonable in reclining on it flat. *Id*.
That testimony includes Dr. Kress, Defendant's biomechanical expert, who testified "I don't have
a problem with somebody using it in a lie-flat position if they want." Kress. Dep. at 123:7-8, ECF
No. [92-35]. Such testimony, Plaintiff reasons, means the danger was not open and obvious.
Furthermore, Plaintiff contends the case law on which Defendant relies is unavailing as she was
not engaged in an inherently dangerous activity, nor could she have used her senses to observe the
dangerous condition. Instead, she merely sat in a chair that had the ability to recline in her
stateroom.

Defendant replies that use of the chair should have been a matter of "common sense" which
is aligned with the testimony of the manufacturer. Zhang Dep. at 73:20-24, 2-0-24, 75-6:17-10.
ECF No. [92-17]. Defendant maintains Plaintiff caused her own fall, and under the applicable
reasonable person standard, Plaintiff failed to appreciate the nature of the condition before her on
the balcony. *Id*.; *see Hoover v. NCL (Bahamas) Ltd.*, 491 F.Supp.3d 1254, 1256 (S.D. Fla. Sept.
29, 2020). For those reasons, Defendant contends summary judgment is warranted.

The Court is unpersuaded that the dangerous condition was open and obvious such that Defendant had no duty to warn. Defendant's argument that Plaintiff should have used her common sense to not lay on the chair is contradicted by the record. The manufacturer of the subject chair determined it was important to provide a warning to Defendant that the "flat position is for shipping purposes only." Thus, the ability to put the chair in the flat position despite this limitation may be a danger that is not apparent to a reasonable passenger, imposing a duty to warn on Defendant.

Moreover, the record reflects that the manufacturer has made a similar chair, in the same "Koko" line of products, that *does* lay flat with a locking mechanism such that a person can lounge on it flat. The "Koko II Stackable Mesh Reclining Lounge Chair" has been marketed by Janus et Cie as "flat and five adjustable positions." ECF No. [92-23]. The marketing materials include a photo showing that it can be laid almost entirely flat. The subject chair is the "Koko II 2 Position Reclining Armchair." ECF No. [92-20]. The listed dimensions are similar, if not identical, and as they are in the same product line, look strikingly similar. The manufacturer's Vice President of Product Design and Development testified that other armchairs *can* recline and "we have other lines in the Koko II that are reclining armchairs as well." Zhang Dep. at 26:3-4, ECF No. [92-17].

> Q. Is this -- is this what you're referring to as the standard Koko II reclining lounge chair?
> A. Correct. This looks like -- looks to me like the standard Koko II.
> Zhang Dep. at 43:11-14, ECF No. [92-17].
>
> Q. Okay. Do you know why Royal Caribbean asked for a change from a five-position chair to what you have as a two-position chair?
> A. I don't know specifically why, Jonathan. I can only speculate.
> Zhang Dep. at 42:22-25, 43:1-2, ECF No. [92-17].

It is therefore objectively difficult to conclude that the inability to lay flat on one Koko II Reclining Chair was an open and obvious condition and the record evidence undermines Defendant's argument that use of the chair to lay flat was an issue of common sense.

Reliance on *Rafflo v. Gymboree Retail Stores, Inc.*, 2013 WL 3770844, (M.D. Fla. July 19, 2013) is unpersuasive. In *Rafflo*, unlike here, there was no indication the defendant was warned of a restricted use of the subject chair. 2013 WL 3770844, at *3. Nor is this case similar to *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. Nov. 20, 2006), where the court determined the defendant cruise ship had no duty to warn a passenger who chose to go on an excursion in Belize, floating "down a river in the rain forest, in and out of caves, while on an inner tube." 462 F.Supp.2d at 1234. Although the cruise line staff advised her it was safe, the court determined the duty to warn only extends to dangers which are not apparent or obvious. *Id*. at 1238. As the plaintiff in *Isbell* opted to take an excursion along a river in a rain forest in an inner tube, the risk of a snake bite was open and obvious. *Id*. Here, Plaintiff persuasively argues her case is wholly different because the danger of sitting in a chair in her stateroom was not open and obvious, and defendant had a duty to pass the warning it repeatedly received onto her as a passenger on its vessel.

The Court finds that a reasonable juror could find that the limitation of the chair was not an open and obvious condition and could return a judgment in favor of Plaintiff. Defendant, as movant, has not met its burden to show the absence of a genuine issue of material fact on whether the condition was open and obvious. Accordingly, Defendant has failed to establish it is entitled to summary judgment on this issue.

### iii.  Notice

Defendant seeks summary judgment with respect to notice. Defendant asserts it did not have notice given its contention there is no evidence of a dangerous condition that was open and obvious, and there cannot be a duty to warn absent a dangerous condition that exists. Defendant contends there is no evidence of similar accidents because of issues with the locking mechanism or shifting one's weight beyond what "common sense" allows. ECF No. [86] at 8. Defendant

argues "there is no evidence of actual or constructive notice in the record" and therefore it has no liability. *Id*.

Plaintiff responds that Defendant's motion did not address the issue of actual notice. ECF No. [109] at 14. Plaintiff argues there was actual notice of the danger from the manufacturer which clearly states at all points in the purchasing, manufacturing, and delivery of the product "lie flat for shipping purposes only." ECF No. [92-20] at 15. Plaintiff reasons that Defendant's focus on prior incidents is misplaced because "evidence of prior incidents is unnecessary to establish that Defendant had actual or constructive notice." *Hornsby v. Carnival Corporation*, No. 22-cv-23135, 2023 WL 8934518, at *22 (S.D. Fla. Dec. 22, 2023). Plaintiff claims all of Defendant's legal citations are inapposite because no case cited pertains to a defendant that had actual notice of a potentially dangerous condition, but failed to pass along the warning to a plaintiff who was then injured in a related manner. ECF No. [109] at 15.

Defendant replies there is no evidence in the record pertaining to notice of the dangerous condition, and specifically, no notice that the chair was too big for the balcony or should have been locked to the floor. ECF No. [121] at 4. Defendant argues the purported actual notice from the manufacturer indicating the flat position is "for shipping purposes only" is not enough. Defendant claims that is nothing more than a "shipping statement" from the manufacturer and was not notice intended "to prevent a person from flipping backwards in the chair." *Id*. at 5. Defendant contends nothing in the record demonstrates that it knew or should have known that the statement was intended to prevent an accident like this. *Id*.; *see Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp.3d 1311, 1323 (S.D Fla. Mar. 6, 2015) (the "mere implication of actual [] notice is insufficient to survive summary judgment; rather the plaintiff must show specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for

corrective action."). For summary judgment to be appropriate, Defendant maintains that Plaintiff must establish with evidence Defendant's knowledge that the dangerous condition existed. *Scott v. Carnival Corporation*, No. 1:23-cv-21936, 2024 WL 1635904 (S.D. Fla. Mar. 12, 2024).

In *Scott*, the court declined to find actual notice of a dangerous condition when one crewmember was positioned outside of a temporarily overflowing pool. 2024 WL 1635904, at \*6. The court held actual notice cannot be imputed to a defendant shipowner based solely on the actions or knowledge of one crewmember. *Id*. Still, even if actual notice is established, "the defendant must also know that the condition is dangerous" before liability can be determined. *Id*. (citing *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017)).

The type of facts in the record matters. The Eleventh Circuit held circumstantial evidence is insufficient to establish actual notice of the shipowner. *Jackson v. NCL America, LLC*, 730 F. App'x. 786, 789 (11th Cir. 2018). In *Jackson*, the Eleventh Circuit rejected an appellant's argument that an onion peel she fell on "must have been dropped by a fellow crew member" establishing that the shipowner has actual notice. *Id*. The Eleventh Circuit observed there was no evidence to establish actual notice, and circumstantial evidence, without more, did not suffice. Here, Plaintiff has more, including a warning to not lay flat outside of shipping purposes, and expert testimony supporting her case. The record supports that Plaintiff is not solely relying on the fact that she fell.

Summary judgment can only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).

Here, Defendant had ample warnings of a potentially dangerous condition. There was a warning that the subject chair, the Koko II 2 Position Reclining Armchair, *could* recline to lay flat, *but* it was expressly not to be used in that manner by passengers. There is only one circumstance that the subject chair should be laid flat and that is "for shipping purposes only." *See* RCCL / Freedom Class Care & Maintenance Information, July 1, 2015, ECF Nos. [92-14], [92-20]. Plaintiff submitted a brochure of furnishings designed for Royal Caribbean; the subject chair is the only item that has any limiting notice precluding a certain use. *Id*. This warning was also present on the "quote documents" (similar to proforma invoices) sent from the manufacturer, Janus et Cie, to Defendant. ECF Nos. [92-15], [92-28]. On the quote documents, the subject chair is the only item with an accompanying warning limiting its use.

As the Eleventh Circuit held in *Guevara v. NCL (Bahamas) Ltd*., 920 F.3d 710 (11th Cir. 2019) "[n]ot all warning signs will be evidence of notice; there must also be a connection between the warning and the danger." *Id*. at 721 (citing *Taiariol v. MSC Crociere S.A.*, 677 F. App'x 599, 602 (11th Cir. 2017)). In *Guevara*, a plaintiff slipped on a stair leading to a landing that was difficult to see; directly beside the subject step, the defendant placed a warning sign "ATTENTION! FOR YOUR OWN SAFETY PLEASE USE THE HANDRAIL. WATCH YOUR STEP." *Guevara*, 950 F.3d at 715. The Eleventh Circuit distinguished *Guevara* from *Taiariol*, noting a warning sign to "watch your step" means just that: it advises persons to heed that a step is there, not that the danger is that the step could be slippery when wet. *Id*. The court required a connection between the warning and the danger, not one that "generically advises passengers" on dangers. *Id*. The Eleventh Circuit therefore held in *Guevara*, the sign to "watch your step" established "a sufficient connection between the warning and the danger—the step down." *Id*. A "reasonable jury could conclude that the warning sign's language applies to the step down,

particularly where, as here, the warning sign immediately precedes the very step at issue and expressly warns passengers to "'watch your step.'" *Id*. at 721.

Defendant argues there is no evidence that the intent of the notice was to "prevent a person from flipping backwards in the chair" or "prevent a passenger from improperly sitting on the chair." ECF No. [121] at 5. Defendant relies on *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 908 (11th Cir. 2017). In *Malley*, the Eleventh Circuit held that the existence of a railing for passengers to hold when stepping up onto a deck of a cruise ship was not actual notice of an unreasonably high step or a potential risk to passengers. 713 F. App'x at 908. At best in *Malley*, the railing indicated the defendant knew a step existed in that location. *Id*. Here, however, Defendant had a warning that the chair should only be in the lay flat position for shipping purposes. While this may provide an inference that there could be an unreasonably dangerous condition with the potential to cause injury, the warning is not explicit enough to rise to notice of an unreasonably dangerous condition causing injury.

However, Plaintiff has provided expert testimony that for any person to lay the chair in the flat position "was not to be done and should've been warned against." Backer at 16:13-20, ECF No. [92-61]. Backer also testified that as cruise lines have thousands of passengers "of all ages, weights, sizes, and levels of mobility" there is even a greater need to advise on specific use limits. Backer at 46:20-25; 47:1-3. As in *Hornsby*, "[t]hat evidence can support a finding that Defendant had actual notice of this dangerous condition. It also can support a finding that Defendant had constructive notice[.]" 2023 WL 8934518, at *23.

Defendant also argues that Plaintiff cannot establish it had constructive notice because she fails to identify any prior incidents with respect to this chair. However, this argument is misplaced as "evidence of prior incidents is unnecessary to establish that Defendant had actual or constructive

notice." *Hornsby v. Carnival Corporation*, No. 22-cv-23135, 2023 WL 8934518, at *22 (S.D. Fla. Dec. 22, 2023) (citing *Thomas v. NCL (Bahamas), Ltd.*, 203 F. Supp.3d (S.D. Fla. Aug. 25, 2016) (collecting cases)). Here, Plaintiff relies on the manufacturer's warning and expert testimony to alternatively establish notice. The authorities Defendant relies upon are thus inapposite, as those cases involve plaintiffs who did not rely on evidence the defendants knew or should have known that the condition in question could impose a risk creating condition. *See e.g. Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308 (S.D. Fla. May 10, 2011); *Salazar v. Norwegian Cruise Line Holdings, Ltd.*, 188 F. Supp.3d 1312 (S.D. Fla. May 23, 2016).

Accordingly, Defendant has failed to meet its burden to demonstrate the absence of a genuine issue of material fact as to notice. A reasonable jury could find that Defendant had notice of the warning of a potentially dangerous condition given the repeated, express warning "Flat Position for Shipping Purposes Only" as to the subject chair. Even though Plaintiff has no burden, the Court notes Plaintiff has shown more than a "metaphysical doubt" and there is "evidence on which a jury could reasonably find" for her as non-movant. *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Accordingly, Defendant has failed to establish it is entitled to summary judgment on this issue.

### E.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the failure to warn portion of her negligence claim, and on Defendant's third and fifth affirmative defenses. ECF No. [91] at 1-2. Defendant's third affirmative defense is her failure to mitigate damages, precluding or limiting her recovery; its fifth affirmative defense is that Plaintiff's injuries are the result of a preexisting condition which was not aggravated by the incident in this case, however if it is determined that a preexisting condition was aggravated, her damages should be limited to the percentage of aggravation attributable to the incident. *Id*. at 2; ECF No. [21] at 3.

i.   **Failure to Warn**

Plaintiff argues she is entitled to summary judgment with respect to the failure to warn aspect of her claim. ECF No. [91] at 4. Plaintiff argues she can establish all elements of a negligence claim based upon the record: (1) Defendant had a duty; (2) Defendant breached that duty; (3) the breach was the actual and proximate cause of her injuries; and (4) Plaintiff suffered damages. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). Plaintiff contends she can establish that Defendant, as shipowner, had actual notice of the risk-creating condition required for maritime claims. *Thomas v. NCL (Bahamas), Ltd.*, 206 F.Supp.3d 1189, 1192 (S.D. Fla. 2016). Finally, Plaintiff claims she can establish that the danger was objectively not open and obvious as required in product liability context, and consistent with the reasonable person standard. *Carroll v. Carnival Cruise Lines*, 955 F.3d 1260, 1264 (11th Cir. 2020); *C. Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 184, 1189-90 (11th Cir. 1993).

Plaintiff argues there are no material facts in dispute, warranting a grant of summary judgment. ECF No. [91] at 4. Plaintiff claims Defendant conceded it owed her a duty that it breached by not informing her about the warning related to the subject chair, and there is no material dispute that the manufacturer provided the explicit warning to not use the fully flat option for the subject chair. Moreover, it is undisputed that Plaintiff was injured when she fell off the chair when it was in the flat position and that she has suffered damages. *Id.*

Defendant responds that Plaintiff's Complaint presented a failure to warn about furniture defects, and the allegations were based on an inadequate locking mechanism. ECF No. [104] at 1-2. Defendant argues it was Plaintiff who misused the chair "and caused her own injury." *Id.* at 2-3. Defendant relies on *Keefe v. Bahamas Cruise Line, Inc.*, 867 F.2d 1318 (11th Cir. 1989), which held that a cruise line "is not liable to passengers as an insurer." *Id.* at 1322 (citation omitted).

Further, Defendant argues this danger was open and obvious. *Lugo v. Carnival Corp.*, 154 F.Supp.3d 1341, 1345 (S.D. Fla. Dec. 31, 2015).

Plaintiff replies that her Complaint encompasses a failure to warn claim. ECF No. [117] at 1. Further, Plaintiff argues the terms "danger" and "defect" are synonymous in Florida product liability law, and, pursuant to *Thomas*, the Court can rely on state law as a supplement to maritime law if that inclusion does not "alter or overrule maritime law." 288 F. Supp.3d at 1192. Plaintiff also contends the underlying dispute establishes that the dangerous condition was not open and obvious and references to the testimony of Jacques and Ms. Campos. Plaintiff also established the manner in which instructions on the furniture are relayed to passengers in a commercial setting is through the commercial partner, which Defendant failed to do. ECF No. [117] at 3; *see* Zhang Dep. at 61:4-18, ECF No. [92-17]. Plaintiff argues she has adequately proven her case and is entitled to summary judgment on the failure to warn aspect of her claim.

It is undisputed that Defendant owed Plaintiff a duty of care as a passenger aboard the *Freedom of the Seas*. SMF ¶¶ 1, 5; D-Opp-SMF ¶¶1, 5. Accordingly, Plaintiff has established the first element of negligence. Next, Plaintiff alleges there is no genuine dispute that Defendant had repeated notice from the manufacturer that the flat position of the subject chair precluded use by passengers in the lay flat position. ECF Nos. [92-19], [92-20]. Plaintiff also established that Defendant did not pass that warning on to the passengers. Campos Dep. at 62:8-10, ECF No. [92-25] ("So why don't we tell people? Because we believe it's common sense."). It is "a cruise ship operator's duty [] to shield passengers from known dangers [] whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Defendant openly breached this duty. Therefore, Plaintiff established the second element of negligence.

However, Plaintiff must still meet her burden to show the absence of a genuine issue of material fact as to Defendant's knowledge of the particular dangerous condition at issue here. Although warnings were given that the flat position of the subject chair was for "shipping purposes only," viewing all evidence and factual inferences in favor of the non-movant, a reasonable jury could conclude that the notice provided was insufficient to warn of the particular danger of the chair tipping over when used in the flat position. As the Eleventh Circuit held in *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710 (11th Cir. 2019) "[n]ot all warning signs will be evidence of notice; there must also be a connection between the warning and the danger." *Id*. at 721.

Consequently, while there is no genuine dispute that Defendant had notice that the flat position was for shipping purposes only for the subject chair, viewed in the light most favorable to Defendant, the inferences drawn raise an issue of material fact between the warning and the danger with use of the subject chair. Thus, "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

As discussed, the Court finds whether Defendant had notice that allowing the chair to be used in its lay flat position would pose an unreasonable risk of injury constitutes a genuine issue of material fact. Accordingly, whether Defendant breached its duty of reasonable care by failing to warn Plaintiff against using the chair in its lay flat position also constitutes a genuine issue of material fact. Accordingly, Plaintiff has failed to meet her burden to demonstrate the absence of a

genuine issue of material fact within the failure to warn aspect of her negligence claim, and summary judgment is not warranted. Given this deficiency, the Court need not address the other factors in Plaintiff's claim at this time.

### ii. Defendant's Third Affirmative Defense: Plaintiff's Failure to Mitigation Damages

In its Answer to the Complaint, Defendant raised as an affirmative defense that Plaintiff failed to mitigate her damages "if any" to the extent she could have avoided loss or injuries. ECF No. [21] at 3.

Plaintiff argues summary judgment on an affirmative defense imposes a burden on the movant to show the defense cannot be sustained by a preponderance of the evidence. *See Fed. Deposit Ins. Corp. for Superior Bank v. Hall*, No. 8:14-cv-834-T-24 TGW, 2016 WL 7325590, at *2 (M.D. Fla. Aug. 29, 2016) (citing *Tingley Sys. Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007)). "Merely stating there is no evidence to support the affirmative defenses is not enough to prevail on summary judgment." *United States v. Four Parcels of Prop. in Green and Tuscaloosa Ctys. in the State of Ala.*, 941 F.2d 1428, 1437–38, n.19 (11th Cir. 1991).

Here, Plaintiff argues there is a complete absence of evidence to show she failed to mitigate her damages. ECF No. [91] at 6. Moreover, Plaintiff argues there is an absence of evidence in the record establishing that Plaintiff failed to do anything that could have mitigated her damages. *Id.* Plaintiff contends that she has shown improvements which have been noted by the defense experts. *Id.*

Defendant responds that Plaintiff failed to mitigate damages related to her allegations of "mental and emotional anguish." ECF No. [104] at 3. Defendant cites to the testimony of Dr. Seely, Plaintiff's retained expert psychiatrist, who testified that Plaintiff has not had treatments with a

psychiatrist or psychologist, which is a "missed opportunity." Seely Dep. at 35-36:23-3, ECF No. [87-6]. Defendant claims this is a failure to mitigate her damages. ECF No. [104] at 3.

Plaintiff replies that she has not received a single order or recommendation from her doctors to commence psychiatric or psychological treatments. ECF No. [117] at 4. Instead, Dr. Seely testified Plaintiff does *not* fit the criteria indicating she has a major depressive disorder. Seely Dep. at 36-37:23-12, ECF No. [87-6].  Dr. Seely opined any indication of a major depressive disorder in Plaintiff's record may have stemmed from medications her cardiologist prescribed three years earlier. *Id*. 77:3-14. Any such record notations are errant, and "just appeared without explanation" but likely might have been caused by a misunderstanding of various prescribed medicines. *Id*.

Plaintiff has met her burden to show Defendant cannot sustain its third affirmative defense by a preponderance of the evidence. Plaintiff can positively establish that the defense experts conceded she worked to improve her condition, mitigating her damages:

> Q. And – and then you note that it's fortunate that Ms. Martin had a tremendous recovery. Right?
> A. Yes.
> Q. And that's true, it is – it is fortunate she had a tremendous recovery?
> A. Yes.
> Q. Because she worked hard to try to achieve that result. Right?
> A. I – I think it was multifactorial. Certainly that may play a role. . .
> Q. . . . in addition to medical care, luck and her desire to get better she's gotten better to some degree?
> A. To a big – to a big degree, I would say, yes.
> Garcia Dep. at 54:16-25, 55:1-17, ECF No. [92-46].

Moreover, as Plaintiff noted, there is nothing in the record indicating she has failed to adhere to her treatments. Further, Plaintiff was able to show Defendant's argument that the "missed opportunity" to seek psychiatric or psychological treatment was never a course of action recommended by a doctor. A further reading of the passage Defendant excerpted from Dr. Seely's testimony indicates Plaintiff claimed to have benefitted "from Pastoral counseling at St. Joseph's

Hospital" which was important to her, emotionally. Seely Dep. at 36:3-5, ECF No. [86-7]. Dr. Seely went on to indicate Plaintiff also worked with physical and occupational therapists "and they are certainly helpful globally." *Id*. at 36:6-9. Accordingly, Plaintiff has met her burden to demonstrate that Defendant cannot sustain its affirmative defenses against her with respect to her mitigation of her losses and injury. Plaintiff is entitled to summary judgment on Defendant's third affirmative defense.

### i.   Defendant's Fifth Affirmative Defense: Preexisting Injuries

In its Answer to the Complaint, Defendant raised as an affirmative defense that Plaintiff's alleged injuries are the result of preexisting conditions, which were not aggravated by the alleged accident in this action. ECF No. [21] at 3.

Plaintiff argues two of Defendant's experts testified that her neck fracture was "solely caused by the accident." ECF No. [91] at 7. Plaintiff argues Dr. Garcia, Defendant's orthopedic expert, provided in his expert report that Plaintiff was "independent," did not need "assistive devices" prior to the accident, and worked full time for the Miami-Dade Police Department. ECF No. [92-52] at 10. The testimony provided indicates certain injuries from the accident aboard the *Freedom of the Seas*, like Plaintiff's neck pain, are permanent. Garcia Dep. at 36:15-21, ECF No. [92-46]. Plaintiff reasons that because there is no evidence to support a prior or preexisting neck fracture, and the evidence indicates her injuries from the incident aboard the *Freedom of the Seas* is permanent, summary judgment is warranted with respect to Defendant's affirmative defense of a preexisting condition. ECF No. [91] at 7.

Defendant responds evidence exists in the record that Plaintiff had a preexisting condition. ECF No. [104] at 4. Defendant points to the testimony by Dr. Garcia that "obviously Ms. Martin had a significant amount of degeneration in her neck before the fall" warranting denial of Plaintiff's motion. Garcia Dep. at 35:7-8, ECF No. [28-1].

Plaintiff replies that the record does not establish that her broken neck was caused by a preexisting injury. ECF No. [117] at 4. Plaintiff argues the defense experts opined "the sole cause of Plaintiff's neck breaking was the fall." *Id.*

The Court has already determined that the expert opinion is stricken with respect to Plaintiff's age-related degenerative preexisting condition being a cause of the fracture. Moreover, in this district, the well-established "eggshell skull rule" applies, and a defendant tortfeasor "takes the victim as found." *Lucas v. City of Delray Beach*, No. 21-cv-80469, 2023 WL 637456, at *4 (S.D. Fla. Sept. 15, 2023). Relevance of a preexisting condition may be relevant to the quantum of damages a plaintiff may claim, but the doctrine clearly precludes diminished liability for the defendant tortfeasor. *See Mowbray v. Carnival Corporation*, No. 08-20931-CIV, 2009 WL 10667070, at *6 (S.D. Fla. Apr. 13, 2009). For those reasons, Plaintiff has met her burden to demonstrate that Defendant cannot sustain its fifth affirmative defense with respect to any preexisting injuries being the cause of her fracture, and Plaintiff is entitled to summary judgment on this affirmative defense.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Omnibus Motion to Strike, **ECF No. [88]**, is **GRANTED;**

2. Defendant's *Daubert* Motion, **ECF No. [87]**, is **DENIED**;

3. Plaintiff's *Daubert* Motion, **ECF No. [89]**, is **DENIED;**

4. Defendant's Motion for Summary Judgment, **ECF No. [86]**, is **DENIED**;

5. Plaintiff's Motion for Partial Summary Judgment, **ECF No. [91]**, is **GRANTED IN PART and DENIED IN PART**; and

6. Plaintiff's Motion to Amend/Correct Exhibit B of Plaintiff's Response, **ECF No. [124] is DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 8, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record